*140 OPINION.
Morris:
The sole question involved in this appeal is whether the taxpayer and the Sun .Trading Co., Inc., were affiliated for the year 1919. The taxpayer contends that the stock issued to Falk and Leech for their notes was illegally issued, being in violation of sections 53 and 55 of the New York Stock Corporation Law, should be disregarded in determining the question of affiliation, and that in any event an affiliation existed after August 1, 1919, the due date of the notes.
The pertinent provisions of section 240 of the Revenue Act of 1918 read as follows:
Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the *141 taxes thereunder shall be computed and determined upon the basis of such return: * * *.
* * * * * * *
(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests of by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.
It is apparent from the above-quoted provisions that if the 340 shares of stock of the total of 750 shares outstanding issued to Falk, and Leech for notes are disregarded, the taxpayer and the Sun Trading Co., Inc., were affiliated for the year 1919, and if such stock is taken into consideration, no affiliation existed. The taxpayer does not question the bona tides of the transaction. Falk conceived the idea and supervised the incorporation of the new company, was vice president and a director thereof and active in its management. He and Leech were the record holders of a majority of the outstanding stock of the Sun Trading Co., Inc., and as such, and under their agreement with that company, were entitled to vote the same and did vote it. They exercised all the rights of 'stockholders. Even though there might have existed as between the parties certain defenses in the event of refusal of the makers to pay and an attempt to recover on the notes, or even though Falk and Leech might have been restrained from voting the stock, no such action was taken. They continued as record holders of the stock and exercised the control pertaining to such ownership throughout the period in question.
The taxpayer contends that if any ownership or control of stock was vested in Falk or Leech prior to August 1, 1919, it was forfeited on that date because, under the terms of the notes, upon default in the payment thereof, the Sun Trading Co., Inc., had the absolute right to sell the stock held as collateral at public or private sale without notice to the makers. This argument is untenable, however, because the notes further provide that the makers have the right to vote the stock “unless and until such sale.” No such sale was made on August 1, 1919, or at any time during that year. The forfeiture of the voting rights could, under the terms of the agreement, only take place when the stock was sold for failure to make the required payments on the notes. Although no payments were made, the Sun Trading Co., Inc., did not exercise its right to sell the stock, and therefore the power to vote the same remained in Falk and Leech. The notes were finally canceled in 1920 at the time of the dissolution of the corporation.
It is our opinion, therefore, that substantially all of the stock of the taxpayer and the Sun Trading Co., Inc., was not owned or *142 controlled by the same interests during the year 1919,. and that the action of the Commissioner in denying affiliation must be approved.